IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PENNY JEAN ELLIOTT                                                                                    PLAINTIFF

v.                              CASE NO.        12-2112

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed her applications for DIB on April 8, 2010, alleging an onset date of April 29, 2009, due to plaintiff's Back Injury. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on November 4, 2010. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 45 years of age and possessed a 12th grade education. The Plaintiff had past relevant work ("PRW") experience as a sales

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

coordinator and support staff. (T. 156).

On January 4, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disc disease of the lumbar spine and residuals of a back injury did not meet or equal any Appendix 1 listing. (T. 15). The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to occasionally lift/carry ten pounds or less and push/pull within these same limitations. She can sit for six hours during an eight-hour workday, stand/walk for two hours in an eight-hour workday, and occasionally climb, balance, crawl, kneel, stoop, and crouch. (T. 14). With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as lamp shade assembler, compact assembler and shoe buckler and lacer. (T. 19).

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. Development of the Record**

The Plaintiff first contends that the ALJ did not properly develop the record because he did not obtain additional information from Dr. Baskin. (ECF No. 7, p. 10). The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*,

960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The Plaintiff, an individual with an excellent work record from 1988 until 2009, fell on the job in April 2009. She began to get treatment from Dr. Roxanne Marshall on May 4, 2009 (T. 220) and was treated through June 12, 2009 when Dr. Marshall felt the Plaintiff should return to work but should be accommodated with "intermittent standing duty with no lifting, standing, or stooping"  (T. 213). The Plaintiff was referred to and treated by Dr. Capocelli in July 2009 who noted "significant loss of disk space height and Modic changes in the endplate as well as broad-based disk protrusions at L5-S1 demonstrates mild degenerative changes, and possibly anterior and small disk protrusions". (T. 314). Dr. Capocelli felt that the Plaintiff could only work 4 hours a day and 20 hours week on light duty. (T. 311). The Plaintiff had a Functional Capacity Evaluation in August 2009 that found that she could perform light work (T. 288) and could carry 30 pounds occasionally, but demonstrated "mildly decreased tolerance to prolonged standing" but walked with an altered gait. (T. 287).

The Plaintiff was then referred to and treated by Dr. Wayne Bruffett, a board certified, orthopedic surgeon who talked to the Plaintiff about a "two-level interbody fusion with instrumentation and bone grafting" but he did not recommend that procedure. He noted that the Plaintiff did "drag" her right foot. (T. 308). Dr. Bruffett ordered a Nerve Conduction Study and

EMG which were performed by Dr. Sprinkle in March 2010. (T. 224). These studies were normal. (T. 224, 351). Dr. Bruffett continued to treat the Plaintiff and noted in April 2010 that she was "pain free" (T. 303). In September 2010 Dr. Bruffett noted again that the Plaintiff was not a candidate for surgery (T. 399) and that she should manage her pain with over the counter medication. (T. 400). Dr. Bruffett also noted that "nicotine in the presence of degenerative disc disease can result in more symptoms" (Id.).

A Physical RFC assessment was performed by Dr. David Hicks on May 13, 2010 which found Plaintiff could lift 20 pounds occasionally, 10 pounds frequently and could sit, stand and /or walk for 6 hours in an 8-hour work day. (T. 319). Dr. Hicks also found the Plaintiff had limitations in stooping and crouching. (T. 320). Dr. Hicks' opinion was reviewed and affirmed as written by Dr. Bill Payne in June 2010. (T. 348).

In June 2010 the Plaintiff began to be treated by Dr. Baskin (T. 350) and sees him in July (T. 361), August (T. 363), October (T. 373), and November (T. 373). During this time the Plaintiff is seen by Dr. Riley for Chiropractic treatment. (T. 389, 395, 392, 396, 397). On November 22, 2010 Dr. Baskin felt that the Plaintiff could perform sedentary-clerical work. (T. 384).

An ALJ is not required to order a consultative evaluation; he "simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir. 1989); *see also Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir. 2001) (ALJ need not order additional examinations if there is substantial evidence in the record to make an informed decision). *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure

to develop the record). '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.' " *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir.2001) (quoting *Frankl v. Shalala*, 47 F.3d 935, 937–38 (8th Cir.1995)) (alterations in original).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this case the court believes that the ALJ did not commit any error in failing to re-contact Dr. Baskin.

**B. Failure to consider Evidence:**

The Plaintiff next contends that the ALJ failed to consider her complaints of fatigue. (ECF No. 7, p. 12). The Plaintiff complained of fatigue at the time she filed for disability (T. 148) but the court cannot find any reference in any of the medical records where the Plaintiff complains of "fatigue". The Plaintiff's argument that the ALJ failed to consider the Plaintiff's complaints of fatigue is conclusory, as Plaintiff provided no meaningful analysis of the relevant facts. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) ("We reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings."). The court finds that there is no credibly proof that the Plaintiff suffered from "fatigue" and the ALJ committed no error in not considering it.

**C. Credibility Determination:**

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d

1211, 1217 (8th Cir.2002)).   The Plaintiff testified that she could not work because of the pain associated with the injury she suffered in April 2009. The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 15).

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

    1.  Work History

The Plaintiff had an excellent work history as reflected by her earnings record. (T. 106-107).  The Plaintiff's work history would certainly not detract from her credibility.

    2.  Daily Activities:

The Plaintiff indicated in her Function Report that she was able to meet her personal care (would have to lean on something to put on pants) (T. 133), she prepared her own meals, and did

light housework (T. 134). She acknowledged that she could drive and ride in a car and did her own shopping. The Plaintiff acknowledge that she cared for her seven year old son (T. 132) and in December 2011 it appears that the Plaintiff was divorced as was the sole care giver for her son. (T. 211).

These activities do not support plaintiff's claim of disability. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

    3.  Duration, Frequency and Intensity:

The lack of an objective medical basis to support a claimant's subjective complaints can be considered in evaluating a claimant's credibility. *Polaski,* 739 F.2d at 1322*; Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir.2002).

In July 2009 Dr. Capocelli found the Plaintiff had Degenerative disk disease but minimal foraminal and canal impingement. (T. 359). The Plaintiff's EMG and nerve conduction studies by Dr. Brent Sprinkle were normal. (T. 224, 351). In October 2010 Dr. Baskin found that her "pain seems to be somewhat disproportionate to the objective findings" and he referred her to chiropractic treatment. (T. 373). Dr. Bruffett was of the opinion that the Plaintiff did not have "any type of permanent impairment" in May 2010 (T. 356) and in September 2011 he stated that

there was no "objective evidence of an injury that would support an impairment rating". (T. 400). He felt that she could manage her pain with over the counter medication and that her smoking exacerbated her pain symptoms.

Dr. Bruffett is a orthopedic specialist. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5); *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005).

    4.  Medication

Shortly after her injury the Plaintiff was prescribed Darvocet-N100 for pain by Dr. Marshall (T. 220, 260) but in May (T.282) and September 2009 there was no medication indicated on the Johnson Regional Medical Center record. (T. 261). In May 2010 the Plaintiff's Physical Therapy records indicate that there were "no prescription or over the counter medications being taken". (T. 340). Dr. Riley's records note that the Plaintiff was taking Cellebrex[2] in October 2010 but in September 2011 Dr. Bruffett stated that the Plaintiff should manage her chronic pain with over the counter medication. *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain).  A claimant's allegations of disabling pain may be discredited under the third Polaski factor by evidence that the claimant has received minimum medical treatment and/or has taken medications for pain only on an occasional basis. *See Cline v. Sullivan* 939 F.2d 560, 568 (C.A.8 (Iowa),1991); *citing Williams v. Bowen*, 790 F.2d 713 (8th Cir.1986).

---

[2]Celebrex (celecoxib) belongs to a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). It works by reducing hormones that cause inflammation and pain in the body. Celebrex is used to treat pain or inflammation.

The court also notes that when the Plaintiff visited Dr. Bruffett on April 5, 2010 he noted that "Ms. Elliott returns and is pain free". In his PLAN for her he states again that "Ms. Elliott is now pain free. I would recommend some physical therapy for gait training and hopefully some degree of work hardening". (T. 303). Three days later, on April 8, 2010, the Plaintiff filed her application for DIB and in her Pain and Other Symptoms Report she states that she has "constant pain or discomfort" (T. 148).

5. Functional Restrictions:

The Plaintiff's treating physician, in June 2009, felt that the Plaintiff could return to her work with accommodation. (T. 213). In July 2009 Dr. Capocelli felt that the Plaintiff could work 4 hours per day for 20 hours per week on light duty. (T. 311). In August 2009 a Functional Capacity Evaluation found that the Plaintiff could lift 30 pounds occasionally and had mildly decreased tolerance to prolonged standing (T. 287) and it was felt that she could perform work in the LIGHT classification. (T. 288). None of the Plaintiff's treating physicians have placed any greater limitations than the RFC determined by the ALJ. The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Hutton v. Apfel, 175 F. 3d 651 at 655 citing Spradling*, 126 F.3d at 1075.

6. Worker's Compensation Claim

The ALJ also noted that "the claimant drew unemployment benefits in 2009 and 2010 subsequent to her job termination in September 2009. (Exhibit 3D). The acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability. *See Cox v. Apfel* 160 F.3d 1203, 1208 (C.A.8 (Mo.),1998) *citing Salts v. Sullivan*, 958 F.2d 840, 846 n. 8 (8th Cir.1992). However, the negative impact cannot be

uniformly or automatically applied in every case. Courts have held that the "mere receipt of unemployment insurance benefits does not prove ability to work." *See Kinsella v. Schwieker*, 708 F.2d 1058, 1066 (6th Cir.1983) ("in the context of all the evidence, it was unreasonable to infer that the application for such benefits diminished the credibility of [claimant's] complaints of pain."). Regardless, it was appropriate for the ALJ to consider the application for benefits in light of the other evidence in the case.

Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The court has looked at the record and believes that the ALJ's discounting the credibility of the Plaintiff was justified.

**D.  RFC Determination:**

The ALJ determined that the Plaintiff had the Residual Functional Capacity to :

> occasionally lift/carry ten pounds or less and push/pull within these same limitations. She can sit for six hours during an eight-hour workday, stand/walk for two hours in an eight-hour workday, and occasionally climb, balance, crawl, kneel, stoop, and crouch. (T. 14).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all

relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

A Physical RFC Assessment was performed by Dr. David Hicks on May 13, 2010 who found that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, and that she could sit, stand and/or walk for 6 hours in an 8-hour workday. (T. 319). In making this determination the doctor had access to the Plaintiff past medical records from her treating physicians. (T. 316-317). Dr. Hicks' opinion was reviewed and affirmed by Dr. Bill Payne on June 7, 2010. (T. 348).

The Plaintiff's treating physicians have indicated that no surgery is called for and have only prescribed chiropractic treatment which consisted of manipulation and ultrasound (T. 375) and Hot and Cold Packs, Therapeutic Exercise/Activity and TENS stimulation. (T. 387).  See *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

The court does not believe that the ALJ committed any error in assessing her Physical Residual Functioning Capacity.

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this June 26, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE